# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SONNIEL R. GIDARISINGH,

                Plaintiff,

v.

KYLE DEMERS,

                Defendant.

Case No. 23-CV-347-JPS

**ORDER**

    Plaintiff Sonniel R. Gidarisingh, an inmate confined at Waupun Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Kyle Demers ("Demers") violated his constitutional and state-law rights. ECF No. 1. On July 7, 2023, the Court screened Plaintiff's amended complaint and allowed the case to proceed against Demers. ECF No. 5. On December 22, 2023, the Court entered a scheduling order. ECF No. 10. On January 2, 2023, Plaintiff filed a motion to amend the complaint, ECF No. 11. On March 7, 2024, Plaintiff filed a motion to stay the case. ECF No. 12. On March 28, 2024, Defendant filed a response brief indicating he takes no position on the pending motions. ECF No. 13.

    The Court will grant Plaintiff's motion to amend the complaint. Federal Rule of Civil Procedure 15 allows amendment once as a matter of course in certain circumstances; Rule 15 also provides that a Court should freely grant leave to amend when justice so requires. Civil Local Rule 15 requires that a motion to amend a complaint notify the court of the proposed changes and the proposed amended complaint be filed as an attachment to the motion. Civil Local Rule 15 further requires that a motion

must reproduce the entire pleading as amended and may not incorporate any prior pleading by reference. Plaintiff indicates that he wishes to amend his complaint in order to correct the date of the incident as well as to bring claims against two additional defendants involved in the incident. As such, the Court will grant Plaintiff's motion to amend the complaint and instruct the Clerk of Court to file the second amended complaint, ECF No. 11-1, as the operative complaint going forward. The remainder of this Order screens the second amended complaint and addresses the motion to stay.

1.  **SCREENING THE SECOND AMENDED COMPLAINT**

    1.1  **Federal Screening Standard**

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2 Plaintiff's Allegations

On April 5, 2020, Plaintiff was locked inside his cell in the southwest hall. ECF No. 11-1 at 2. Another inmate, David Hall ("Hall"), a "tier-tender" inmate who was handing out dinner meal trays, was arguing with another inmate. *Id.* at 2–3. When Hall reached Plaintiff's cell, he was still actively yelling at another inmate in an argument. *Id.* at 3. Because the COVID-19 pandemic severely affected the prison population, Plaintiff respectfully asked Hall not to talk over his open meal tray. *Id.* Hall negatively responded to Plaintiff, stating, "Shut your bitch-ass up." This interaction resulted in a verbal altercation between Plaintiff and Hall that was very loud and could be heard by the second-shift security staff, including Demers, Defendant C.O. Redler ("Redler"), and Defendant Sgt. Cody Gould ("Gould"). *Id.*

Hall, who was approximately 6'2" and weighed 240 pounds, returned to Plaintiff's cell to threaten him, stating, "I'm going to whoop your ass today." *Id.* at 4. Hall then called to Demers, Redler, and Gould to open Plaintiff's cell so that Plaintiff could use the kiosk. *Id.* Plaintiff did not

want to use the kiosk, and Hall was lying so that he could follow through with his threat of physical assault. *Id.* Plaintiff left his cell to report that Hall lied. *Id.* Before Plaintiff could reach the sergeant's cage, Plaintiff saw Hall talking to Demers, Redler, and Gould. *Id.* at 4–5.

Hall saw Plaintiff about to come down the last flight of stairs to the sergeant's cage, and Hall separated himself from Demers, Redler, and Gould to confront Plaintiff. *Id.* at 5. Hall yelled at Plaintiff in an angry tone, "What's happening now punk," while Demers, Redler, and Gould watched this interaction. *Id.* Plaintiff at the time was 5'10" and approximately 185 pounds, and was smaller than Hall. *Id.* Plaintiff tried to prevent Hall from coming up to his level because he was afraid of Hall. *Id.*

Hall grabbed Plaintiff and a physical altercation ensued. *Id.* Demers, Redler, and Gould just watched the altercation without intervening. *Id.* Demers, Redler, and Gould only intervened when they saw that Plaintiff was successfully defending himself, and Demers angrily yelled for Plaintiff to stop hitting Hall. *Id.* Demers, Redler, and Gould then physically intervened to break up the fight. *Id.* at 5–6. Plaintiff complied with the orders to go up against the wall. *Id.* at 6. Demers, Redler, and Gould allowed Hall to walk away without any restraint. *Id.* At that point, it became clear to Plaintiff that Demers, Redler, and Gould had intentionally opened Plaintiff's cell so that Hall could physically assault Plaintiff. *Id.*

Demers disliked Plaintiff because Plaintiff had filed complaints against him in the past. *Id.* Even though Plaintiff was not resisting anyone, Demers yelled at Plaintiff to stop resisting. *Id.* Demers then maliciously and sadistically pushed Plaintiff's head into the concrete wall. *Id.* Plaintiff experienced excruciating pain and dizziness. *Id.* Demers continued to yell loudly at Plaintiff after pushing his head into the wall. *Id.* at 7. This caused

Page 4 of 13
Case 2:23-cv-00347-JPS    Filed 04/12/24    Page 4 of 13    Document 14

Plaintiff to have flashbacks of a violent incident from his childhood where he was chopped with a machete and shot. *Id.*

Prior to this incident, Plaintiff had filed complaints against Demers related to him intentionally slamming Plaintiff's cell trap door shut. *Id.* Demers was aware of Plaintiff's PTSD, intentionally harassed Plaintiff, and at times threw away Plaintiff's personal property. *Id.* Plaintiff was taken to segregation and placed on TLU while Hall remained in general population without any discipline. *Id.* at 8. Plaintiff received a conduct report from Gould for assault. *Id.* On April 17, 2020, Plaintiff had his disciplinary hearing and Lt. Matthew Burns stated that the video does not show Plaintiff resisting staff. *Id.* Nevertheless, Plaintiff received a sixty-day disposition in segregation. *Id.*

On February 13, 2023, Demers searched Plaintiff's segregation cell and harassed Plaintiff by taking his three personal combs. *Id.* at 9. Demers did this as part of his campaign of harassment against Plaintiff in retaliation for Plaintiff filing inmate complaints. *Id.* at 9–10. On February 14, 2023, Plaintiff filed another complaint against Demers. *Id.* at 10. On February 28, 2023, ICE Tonia Moon acknowledged receipt of the complaint. *Id.* On April 5, 2023, ICE Moon contacted Demers about the complaint and Demers intentionally lied. *Id.* As a result of this, Demers was aware of Plaintiff's complaint. *Id.*

On May 27, 2023, Plaintiff was housed in general population and Demers was assigned as first-shift sergeant in Plaintiff's area in the northwest cell hall ("NWCH"). *Id.* That day, Plaintiff was experiencing headaches and difficulty breathing. *Id.* All of Plaintiff's medications and asthma/COPD inhaler "Spiriva" are always kept in the sergeant's cage. *Id.* at 11. Medication is given to inmates at their cell door four times per day.

*Id.* The sergeant assigned to NWCH on the first and second shifts give the officers the prescribed medications and inhalers to the inmates. *Id.* Demers retaliated against Plaintiff by intentionally lying to Officer Bauer that Plaintiff's inhaler and medications were not in the sergeant's cage. *Id.*

Plaintiff told Bauer that he was having difficulty breathing and needed the "Spiriva" inhaler. *Id.* Plaintiff also had a headache and needed his headache medication prescribed by the neurologist. *Id.* at 12. Demers knew that Plaintiff needed his inhaler and medication and intentionally denied them to Plaintiff, causing him unnecessary and prolonged pain. *Id.* Demers knew that Plaintiff's inhaler and medication were in the sergeant's cage on May 27, 2023, but he denied them to Plaintiff in retaliation for the inmate complaints. On June 1, 2023, Plaintiff filed a complaint against Demers for this incident. *Id.* On June 13, 2023, Plaintiff's complaint was affirmed for Demers's retaliatory act of denying Plaintiff his medication. *Id.*

### 1.3 Analysis

First, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Demers, Redler, and Gould. The Eighth Amendment to the U.S. Constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "This means that a constitutional violation inheres in a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* (citing *Farmer*, 511 U.S. at 828).

Deliberate indifference has an objective component and a subjective component. *Id.* To satisfy the objective component, the prisoner must have been exposed to a harm that was objectively serious. *Id.* (citing *Farmer*, 511 U.S. at 834). Under the subjective component, the prison official must have

known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Farmer*, 511 U.S. at 837–38). That is, the official must have been "aware of facts from which the inference could be draft that a substantial risk of serious harm exists," and he must have "draw[n] th[at] inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). But liability does not attach if the prison official takes reasonable measures to abate the known risk. *Id.* (citing *Farmer*, 511 U.S. at 844). At the early pleading stage, the Court finds that Plaintiff sufficiently alleges an Eighth Amendment deliberate indifference claim against Demers, Redler, and Gould based on the allegations that they knew of the serious risk of danger to Plaintiff's physical safety when they opened Plaintiff's cell and allowed the physical altercation with Hall to ensue. As such, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Demers, Redler, and Gould.

Second, Plaintiff may proceed on an Eighth Amendment excessive force claim against Demers. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Taking Plaintiff's allegations as true, Demer's conduct of unnecessarily slamming Plaintiff's head into the wall would be viewed as

excessive force. As such, Plaintiff may proceed on an Eighth Amendment claim against Demers for excessive force.

Third, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Demers for his indifference to Plaintiff's serious medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable " 'depends on the seriousness of the condition and the ease of providing treatment.' " *Id.* (quoting *McGowan*, 612 F.3d at 640).

Plaintiff alleges that Demers purposefully kept Plaintiff's prescribed medication and inhaler from him. Plaintiff further alleges that the delay of his medication and inhaler caused him unnecessary and prolonged pain. At the pleading stage, the Court finds that Plaintiff's allegations sufficiently state an Eighth Amendment deliberate indifference claim to a serious medical need against Demers.

Fourth, the Court finds that Plaintiff can proceed against Demers on a First Amendment retaliation claim. To prevail on this claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that the Demers retaliated against him for filing inmate grievances. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, Plaintiff alleges suffering deprivations—having his property taken and being denied his prescribed medications and inhaler—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter First Amendment activity). Finally, Plaintiff alleges that Demers performed these actions as part of his 'campaign of harassment' in retaliation for Plaintiff filing grievances. At the pleading stage, the Court finds these allegations sufficient to state a First Amendment retaliation claim against Demers.

Finally, Plaintiff also alleges state law assault/battery and negligence claims. In Wisconsin, a battery, or assault and battery, is a common law tort, defined as an intentional contact with another that is unpermitted. *Estate of Thurman v. City of Milwaukee*, 197 F. Supp. 2d 1141, 1151–52 (E.D. Wis. 2002) (citing *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 357 (1970)). At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C.

§ 1367(a) and will allow Plaintiff to proceed on a state law claim of assault and battery against Demers for his use of force.

To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). Plaintiff alleges that Demers, Redler, and Gould were negligent by allowing inmate Hall to attack him. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) and will allow Plaintiff to proceed on a state law claim of negligence against Demers, Redler, and Gould.

## 2. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate indifference against Demers, Redler, and Gould for ignoring the risk to Plaintiff's physical safety.

**Claim Two:** Eighth Amendment excessive force against Demers.

**Claim Three:** First Amendment retaliation claim against Demers.

**Claim Four:** Eighth Amendment deliberate indifference to a serious medical need against Demers.

**Claim Five:** Wisconsin state law assault and battery against Demers.

**Claim Six:** Wisconsin state law negligence claim against Demers, Redler, and Gould.

Finally, the Court will deny Plaintiff's motion for a stay of the case. The Court will, however, amend the scheduling order as follows to allow additional time to accommodate the newly added defendants:

**Discovery to be completed by:** July 1, 2024

**Interim Settlement Report due by:** September 9, 2024

**Summary Judgment due by:** September 16, 2024

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to amend the complaint, ECF No. 11, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court docket the second amended complaint, ECF No. 11-1, as the operative complaint;

**IT IS FURTHER ORDERED** that Plaintiff's motion to stay, ECF No. 12, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the scheduling order be and the same is hereby **AMENDED** as indicated by the text of this Order;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the second amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on **Redler and Gould**;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing a third amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 12th day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 12 of 13
Case 2:23-cv-00347-JPS   Filed 04/12/24   Page 12 of 13   Document 14

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.